UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS WOODWARD,

                                 Plaintiff,

      v.                                                                         **DECISION AND ORDER**
                                                                                 09-CV-628S

KALEIDA HEALTH,

                                 Defendant.
_____

## I.  INTRODUCTION

Plaintiff Thomas A. Woodward, proceeding pro se, commenced this employment discrimination action on July 9, 2009.  Plaintiff alleges in his complaint that his employer, Defendant Kaleida Health, discriminated against him on the basis of his race, color and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq*.  Pending before this Court is the Motion of Defendant Kaleida Health for Summary Judgment dismissing the complaint.  For the reasons discussed below, this Court finds the matter fully briefed and oral argument unnecessary, and concludes that Defendant's motion should be granted.

## II.  BACKGROUND

Plaintiff was employed as a printer operator at Defendant's Flint Road laboratory processing center from 1991 to 2008. (Deposition of Plaintiff Thomas A. Woodward, Docket No. 22-8 at 8, 11; Declaration of Gail Krollman, Docket No. 22-16, ¶¶ 7-8; Declaration of Susan Passmore, Docket No. 22-17 ¶¶ 7-8).  On August 5, 2008, a

coworker, Amanda Frese, complained to her supervisor that Plaintiff engaged in inappropriate conduct by showing her a photograph on his phone of what appeared to Frese to be Plaintiff and a naked female engaged in a sexual act. (Krollman Decl. ¶ 20; Passmore Decl. ¶ 20; see Docket No. 22-12 at 3-4 (copy of Frese's email to supervisor)). Frese also complained that this was not the first time that Plaintiff had acted inappropriately toward her. (Docket No. 22-12 at 3; Krollman Decl. ¶ 20; Passmore Decl. ¶ 20). Defendant's human resources personnel conducted an investigation into the complaint. (Krollman Decl. ¶ 23; Passmore Decl. ¶ 23). On August 7, 2008, Plaintiff met with his direct supervisor, Michael Straw, and Susan Passmore, the Acting Manager of Human Resources, regarding Frese's complaint. (Pl.'s Dep., Docket No. 22-8, at 20-21; Passmore Decl. ¶¶ 1, 24). At that time, Plaintiff was suspended pending the outcome of the investigation. (Pl.'s Dep., Docket No. 22-8, at 21; Passmore Decl. ¶ 24; see Docket No. 22-13 (corrective action form)). Following this, a coworker of Frese in the microbiology department, Sue Young, reported that she had previously observed Frese asking Plaintiff to leave her alone, and that a senior-level employee had also asked Plaintiff to leave all microbiology department employees alone. (Pasmore Decl. 22-17 ¶¶ 20, 25, 28). Additionally, Young herself told Plaintiff to leave Frese alone. (Docket No. 22-12 at 13 (Young email); Krollman Decl. ¶ 28; Passmore Decl. ¶ 28; see Pl.'s Dep., Docket No. 22-8 at 18, 23 (acknowledging Sue Young had "warned" him)).

Plaintiff met with Passmore and Straw again on August 11, 2008. (Pl.'s Dep., Docket No. 22-8 at 22; Passmore Decl. ¶ 26). Plaintiff admitted to showing Frese a photograph on his phone, but claimed that it had depicted "just a 'fat guy in a shirt.'" (Passmore Decl. ¶ 26; Pl.'s Dep., Docket No. 22-8 at 16; see Docket No. 22-12 at 10

(Plaintiff's notes)). He also acknowledged that when he approached Frese later on that shift, she informed him that the he was disgusting (Passmore Decl. ¶ 26) and that she would not look at photographs on his phone again (Pl.'s Dep., Docket No. 22-8 at 17; Docket No. 22-12 at 10). Plaintiff apologized to Frese for offending her. (Pl.'s Dep., Docket No. 22-8 at 17; 22-12 at 10 (Plaintiff's notes); Passmore Decl. ¶ 26). On August 12, 2008, Gail Krollman, a senior human resources generalist for Defendant, again interviewed Frese. (Krollman Decl. ¶ 27). Frese reported that she was afraid of Plaintiff, who had previously asked a coworker where she went running and then showed up at that location, and she further reported that prior to the photograph incident, she had asked Plaintiff to leave her alone. (Krollman Decl. ¶ 27).

Following the investigation, the human resources representatives concluded that, prior to the photograph incident, Frese and at least two-coworkers asked Plaintiff to leave Frese alone, but Plaintiff continued to approach her nonetheless; Plaintiff had no business reason for those contacts; he admitted to showing Frese a photograph she found offensive; and his conduct also made other employees in the microbiology department uncomfortable. (Krollman Decl. ¶ 29; Passmore Decl. ¶ 29). In light of Plaintiff's own admissions and Young's corroborating statements, Krollman and Passmore determined that Frese's allegations of harassment were credible. (Krollman Decl. ¶ 30; Passmore Decl. ¶ 30). Passmore then met with the head of Plaintiff's department, Fran Meyer, and his supervisor Straw, and these three jointly concluded that the severity of Plaintiff's warranted termination of his employment. (Passmore Decl. ¶ 32). Straw and Passmore informed Plaintiff on August 14, 2008 that he was terminated. (Passmore Decl. ¶ 33; see Pl.'s Dep., Docket No. 22-8 at 22). As stated on Defendant's Corrective Action form,

prepared by his supervisor Straw, Plaintiff's employment was terminated because:

> On August 4, 2008 you showed a picture on your cell phone to a female co-worker that she found [o]ffensive and inappropriate. You admitted that you had been asked in the past to leave this individual alone and to not talk to her, yet you continued to seek her out and to speak to her even after she herself [i]nformed you to leave her alone. This conduct is considered as harassment as it is "unwelcome [b]ehavior that was viewed as demeaning or unacceptable by the recipient[.]" The employee and others at Flint Road feel unsafe and that she is working in an offensive work environment. This type of conduct [c]an not be tolerated.

(Docket No. 22-14).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in December 2008, which he requested also be filed with the New York State Division of Human Rights, alleging discrimination based upon race and sex. (Docket No. 22-4). Specifically he alleged that Defendant "told me I was previously warned not to talk to my accuser[, a white female coworker]. I was never told not to talk to her. Instead, I was told to be careful around her." (Docket No. 22-4). He further stated that he "was the only black male in the department," and:

> [Defendant] conducted a biased investigation. I was given no due process. I believe the accuser was afraid of me because I am a black male. Unemployment told me the [Defendant] provided information to unemployment that I was told not to speak to the accuser because she believed I was gay. I am not gay.

(Docket No. 22-4). Upon review, the EEOC found that Defendant had provided a non-discriminatory reason for Plaintiff's termination, and Plaintiff failed to provide viable comparative information. (Docket No. 22-5 at 2 (letter mailed April 13, 2009)). The EEOC was therefore unable to conclude that the information provided established a violation of federal law by Defendant. (Docket No. 22-5 at 2).

Plaintiff, proceeding pro se, commenced the instant action in this Court on July 9,

2009, alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.* (Complaint, Docket No. 1, at 1-2). Plaintiff indicated on this preprinted form that Defendant's conduct was discriminatory with respect to race, color and sex. (Complaint at 4). The factual allegations in Plaintiff's complaint are as follows:

> "I met a new employee and we had several conversations. When the employee came to work on my shift two other employees informed me that the new person had it out for me and to be careful. I addressed the new person and casual conversations continued. After four months of the new persons employment and feeling that we had a ongoing casual relationship I told a joke with a picture that she concluded was vulgar and harassment to another employee. Later during the shift I was to[ld] I was out of line by the other employee and I apologized to the new person. Four days later I was suspended by HR and told I would be terminated for continued harassment. The new employee did not ever tell me I was bothersome. I was never given any warnings of harassment by HR or Management regarding this or any other employee till now.

(Complaint at 5).

Defendant now moves for summary judgment,[1] arguing that Plaintiff cannot establish a prima facie case of discrimination because he cannot show that his termination occurred under circumstances giving rise to an inference of discrimination, and that Defendant has provided a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

---

[1] In support of its Motion for Summary Judgment (Docket No. 22), Defendant has submitted, in addition to the pleadings (Docket Nos. 22-6 and 22-7) and those documents required by Fed. R. Civ. P. 56 and Local Rule 56 (Docket Nos. 22-1 to 22-3), an Appendix with Exhibits A to L (Docket Nos. 22-4 to 22-15); the Declarations of Gail Krollman (Docket No. 22-16), Susan Passmore (Docket No. 22-17), and Amy L. Hemenway, Esq. (Docket No. 22-18), and a supporting Memorandum of Law (Docket No. 22-19). In opposition (Docket No. 24), Plaintiff has submitted two purported personal declarations, only one of which is signed; another unsigned "Declaration" of Toni Evers, and three additional exhibits. Defendant further submitted in reply the declarations of Susan Passmore (Docket No. 25), Toni Evers (Docket No. 26), and Amy L. Hemenway, Esq. (Docket No. 27).

### III.  DISCUSSION

Initially, Defendant contends that Plaintiff's response to its summary judgment motion is deficient because the response was filed after the court-ordered deadline and failed to include either an opposing statement of fact or memorandum of law. (Reply Declaration of Amy L. Hemenway, Esq., Docket No. 27, ¶ 3; see Local R. Civ. P. 7 (a)(2)(A); 56 (a)(2)). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.' " Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)(emphasis in original), quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).  Here, Plaintiff's response was filed only one day after the ordered deadline, (see Docket Nos. 23, 24), and Defendant has addressed the merits thereof in its reply. This Court will therefore consider Plaintiff's submissions with the special solicitude afforded to pro se litigants Triestman, 459 F.3d at 474-475; Castro v. 32BJ Union, 800 F.Supp.2d 586, 591 (S.D.N.Y. 2011).

Nonetheless, "proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment." Castro, 800 F.Supp.2d at 591. Summary judgment is appropriate, even in a discrimination case, where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), cert denied 540 U.S. 811 (2003); see FED.R.CIV.P. 56 (a)(c). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock 224 F.3d at 41, quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In reviewing a motion for summary judgment, a court must

"construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir.2003).

In a Title VII discrimination case where, as here, there is no direct evidence of discriminatory conduct, the three-part burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) is applied to determine whether summary judgment is appropriate.[2]   Weinstock, 224 F.3d at 42. Initially, a plaintiff must first establish a prima facie case of discrimination by showing that (1) plaintiff is a member of a protected class; (2) plaintiff is qualified for his or her position; (3) plaintiff suffered an adverse employment action; and (4) the circumstances of that adverse employment action give rise to an inference of discrimination. McDonnell Douglas Corp., 411 U.S. at 802; Dawson v. Bumble & Bumble, 398 F.3d 211, 216-217 (2d Cir. 2005); see Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000), cert denied 530 U.S. 1261 (2000)(describing a plaintiff's initial burden as minimal). Once a plaintiff has met this initial de minimus burden of proof, the burden shifts to the defendant to rebut this prima facie case by articulating a legitimate, non-discriminatory reason which, if believed by the trier of fact, would support a determination that unlawful discrimination was not a motivating factor in the adverse employment action. Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000); Weinstock, 224 F.3d at 42; see Leibowitz v. Cornell Univ., 584 F.3d 487, 498 n 2 (2d Cir. 2009)(Title VII authorizes a "mixed motive" discrimination claim);

---

[2]This analysis is also applicable to claims raised under New York State Human Rights Law, N.Y. Executive Law §§ 290 et seq. See Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005); Weinstock, 224 F.3d at 42 n 1; compare with Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 277-278 (2d Cir. 2009)(claims under New York *City* Human Rights Law must be reviewed independently and more liberally than federal and *state* counterparts).

Bickerstaff v. Vassar College, 196 F.3d 435, 446 (2d Cir. 1999), cert denied 530 U.S. 1242 (2000)(noting that this burden is also not a demanding one, as the burden of persuasion always remains with a plaintiff).

"Upon the defendant's articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 224 F.3d at 42. A plaintiff must then "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Id. It is not enough that a plaintiff produces some evidence, rather, in order to survive a motion for summary judgment, a plaintiff must not only present sufficient evidence to support a rational determination by a trier of fact that the purported non-discriminatory reason articulated by the defendant was false, but also evidence upon which a trier of fact may reasonably conclude that plaintiff's assertion of intentional discrimination is true. Weinstock, 224 F.3d at 42, citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Weinstock, 224 F.3d at 42. If, instead, "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred," then the defendant is entitled to summary judgment. Reese v. Sanderson Plubming Prods. Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)

In the instant case, even assuming arguendo that Plaintiff established a prima facie

case of discrimination with respect to race, color and sex,[3] as alleged in his complaint, Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant submitted affidavits from two human resources employees, who each averred that the catalyst for Plaintiff's termination was his conduct in violation of Defendant's Non-Harassment and Standards of Personal Conduct policies. (Krollman Decl. ¶ 29; Passmore Decl. ¶ 29).  This determination was based upon Plaintiff's continued contact with Frese, without a business reason and despite being instructed by Frese and co-workers to leave her alone; his showing Frese a photograph which, by Plaintiff's own admission, she found offensive; and the fact that Plaintiff's conduct was previously found to be offensive and made employees in the microbiology department uncomfortable.  (Krollman Decl. ¶ 29; Passmore Decl. ¶ 29).  Such conduct falls within the definition of harassment stated in Defendant's Non-Harassment Policy, which includes "unwelcome behavior," such as "actions or comments viewed as demeaning or unacceptable by the recipient and . . . conduct that creates an . . . offensive atmosphere for the complainant(s)." (Def.'s Non-Harassment Policy, Docket No. 22-10, at 2). Plaintiff admitted at his deposition that he had been aware of the Non-Harassment Policy during his employment. (Pl.'s Dep., Docket No. 22-8 at 12), and termination is listed as a possible disciplinary measure for employees who engage in harassment. (Def.'s Non-Harassment Policy at 1). Defendant has accordingly articulated a legitimate, non-discriminatory reason for the termination of Plaintiff's employment. Weinstock, 224 F.3d at 42; see Brady v. Office of Sergeant at Arms, 520

---

[3] "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. [This C]ourt has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)(internal quotation marks omitted).

F.3d 490, 496 (D.C. Cir. 2008)("an employer does not engage in discrimination on the basis of race by strictly and uniformly enforcing a policy against any remote hint or suggestion of sexual harassment in the workplace"). Further, Defendant also submitted evidence that, contrary to Plaintiff's allegation that race and gender were a motivating factor, fifteen other employees were also disciplined for violating the Non-Harassment Policy between January 2008 and July 2010, of which ten were Caucasian and four were female. (Krollman Decl. ¶¶ 38-40; Docket No. 22-15 (list of disciplined employees)).  Six of those employees were, like Plaintiff, terminated, and of those, four were Caucasian and one was also female.  (Krollman Decl. ¶ 41; Docket No. 15 (three of those terminations occurred prior to Plaintiff's termination)).

Plaintiff has failed to present sufficient evidence from which a trier of fact could conclude that Defendant's reason for terminating his employment was merely a pretext or that a real motivation was discrimination. Weinstock, 224 F.3d at 42.  Initially, Plaintiff admits to the actions underlying his dismissal.  In both the notes he prepared prior to his termination regarding Frese's complaint, and in his deposition testimony taken after the commencement of this action, he concedes that he showed Frese a photograph that she found to be offensive, "disgusting" and "gross." (Pl.'s Dep., Docket No. 22-8 at 17, 21-22; 22-12 at 10 (Plaintiff's notes); see also Complaint at 5 (alleging that he "told a joke with a picture that she concluded was vulgar and harassment")).  Plaintiff has consistently disputed Frese's allegation to her supervisors that the photograph shown depicted a sexual act.  (Pl.'s Dep., Docket No. 22-8 at 16, 22-12 at 10).  This fact was and is irrelevant to the termination decision, which was based upon the *admitted* fact that Frese found the photograph offensive. (Krollman Decl. ¶ 29; Passmore Decl. ¶29; Docket No. 22-14

(Termination Notice)).  Notably, Plaintiff was terminated because it was concluded that his conduct constituted harassment, not sexual harassment, which is separately defined in Defendant's Non-Harassment Policy. (Def.'s Non-Harassment Policy at 3).

Similarly, Plaintiff disputes that he was told by any supervisor or person of authority to refrain from talking to Frese (Pl.'s Dep., Docket No. 22-8 at 18).  In support of this position, he submits a determination of an administrative law judge ("ALJ") for the Unemployment Insurance Appeal Board reversing a New York State Department of Labor determination disqualifying Plaintiff from receiving unemployment benefits following his termination. (Pl.'s Opp'n, Docket No. 24, at 8-10). The ALJ determined that the initial denial of benefits was based upon the finding that Plaintiff "harassed [a] coworker after being asked to leave her alone," but concluded that the determination neglected to consider that the warnings came from colleagues and not a supervisor. (Id. at 9).  Regardless, whether Defendant's reason for terminating Plaintiff's employment is sufficient to disqualify Plaintiff from receiving unemployment benefits is a separate issue from whether discriminatin was motivating factor in Defendant's action.  See Brown v. Herman's Furniture, Inc., 772 F.Supp. 350, 356-357 (N.D.Ohio 1990), affd 941 F2d 1209 (6th Cir. 1991) (no genuine issue of material fact created by finding of employment board that plaintiff's termination was without just cause, as determination of "the lack of misconduct on the part of plaintiff . . . was not related to some finding of misconduct on the part of defendant").  Here, there is no evidence from which to infer that Defendant's action, even if erroneous by the Unemployment Insurance Appeal Board's standards, was motivated by discriminatory intent.

Indeed, Plaintiff himself cannot state with specificity on what grounds he was

11

discriminated against. At his deposition, Plaintiff answered that he believed race was an issue in his termination because "[a]ll the investigators were white females and the complainant [Frese] was a white female," however, he later conceded that he was "speculating" that Frese was biased against him because he was a black male "just like she's speculating I was having sex with someone" in the photograph. (Pl.'s Dep., Docket No. 22-8 at 19, 25). Plaintiff further testified that he was "unsure" on what grounds he should have based his discrimination claim in his pro se preprinted complaint, which provides a checklist of possibilities, stating that "I should have checked them all, I should have checked religion, national origin. I was a Jehovah's Witness. I don't know what her [Frese's] bias was against me." (Woodward Dep. at 27). Such a shotgun approach is insufficient to meet Plaintiff's burden of offering concrete particulars to support his discrimination claim. See Shub v. Westchester Cmty. College, 556 F.Supp.2d 227, 241 (S.D.N.Y. 2008); O'Sullivan v. New York Times, 37 F.Supp.2d 307, 314 (S.D.N.Y. 1999).

Plaintiff argues in opposition to the motion that his former position was filled after his dismissal and "all replacements were Caucasians." (Pl.'s Opp'n at 1). This conclusory statement is insufficient to create a genuine issue of material fact as to whether race was a motivating factor in his termination. See Shub, 556 F.Supp.2d at 241(plaintiff must present more than conclusory allegations of discrimination); O'Sullivan, 37 F.Supp.2d at 314 (same). The fact that a replacement is of a different race, sex, or age may help a plaintiff to establish a prima facie case, it is however insufficient by itself to raise an inference of discrimination. Gumbs v. Hall, 51 F.Supp.2d 275, 280 (W.D.N.Y. 1999), affd 205 F.3d 1323 (2d Cir. 2000), citing Carson v. Bethlehem Steel Corp. 82 F.3d 157, 159 (7th Cir. 1996); Hines v. Hillside Children's Center, 73 F.Supp.2d 308, 321-322

(W.D.N.Y.1999).

Finally, the remaining arguments in Plaintiff's opposition to the summary judgment motion pertain to allegations of discrimination based on age and sexual orientation. The allegation of age discrimination was not raised in Plaintiff's EEOC charge, and neither allegation was included in his complaint in this action. (Complaint at 4-5; Docket No. 22-4). "[A] plaintiff typically may raise in a district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in [his or] her EEOC charge" Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 83 (2d Cir. 2001), quoting Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993). There is no factual allegation in Plaintiff's EEOC charge that would alert that agency to a claim of age discrimination, (Docket No. 22-4), therefore this claim is not reasonably related to the EEOC charge and will not be considered here. See Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006). Further, sexual orientation is not a protected category under Title VII. See Dawson, 398 F.3d at 217-218. In any event, Plaintiff has offered no evidence from which to infer discrimination on either basis.

### IV. CONCLUSION

Plaintiff has failed to present sufficient evidence from which a rational trier of fact could conclude that either Defendant's legitimate, non-discriminatory reason for his termination is mere pretext or that plaintiff's assertion that intentional discrimination was a motivating factor in his termination is true. Accordingly, Defendant's motion for summary judgment dismissing the complaint is granted.

## V.  ORDERS

IT HEREBY IS ORDERED that Defendant's Motion for Summary Judgment (Docket No. 22) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.


Dated:   January 29, 2012
         Buffalo, New York

                                                           /s/William M. Skretny
                                                     WILLIAM M. SKRETNY
                                                          Chief Judge
                                               United States District Judge